UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| JASON M. LUND,<br><br>                        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                        Respondent. | Case No. 16-CV-119-JPS<br>Case No. 08-CR-00197-JPS-15<br><br><br><br>ORDER |

       The petitioner, Jason M. Lund, was charged, along with twenty-six co-defendants, with conspiring to distribute heroin. *See United States of America v. Johnson*, Case No. 08-CR-197, Docket #1, #60 (E.D. Wis. filed July 14, 2008). Mr. Lund pled guilty on June 3, 2009, to a single count violation of 21 U.S.C. § 841(a)(1). *Id.* at Docket #534. As a part of his plea, Mr. Lund agreed that death and serious bodily injured resulted from the use of the heroin distributed in furtherance of that conspiracy. *Id.* at Docket #534 (listing, *inter alia*, the deaths of Andrew Goetzke and David Knuth). Pursuant to the Court's conclusion that Mr. Lund had coordinated the sales of heroin resulted in the deaths of Mr. Goetzke and Mr. Knuth, Mr. Lund was sentenced in accordance with a twenty-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)—which is also sometimes known as the "death results" penalty enhancement. *Id.* at Docket #730; *see also* 21 U.S.C. § 841(b)(1)(A) (if death or serious bodily injury results from use of substance, defendant shall be sentenced to a term of imprisonment of not less than 20 years or more than life). Mr. Lund unsuccessfully appealed that sentence. *United States v. Walker*, 721 F.3d 828, 840 (7th Cir. 2013), *reh'g en banc denied* Aug. 23, 2013.

On February 1, 2016, Mr. Lund filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docket #1). He argues that his sentence should be corrected because *Burrage v. United States*, —U.S.—, 134 S.Ct. 881 (2014) and *Alleyne v. United States*, —U.S.—, 133 S.Ct. 2151 (2013)[1] render him "actually innocent" of the conduct required to support the penalty enhancement under 21 U.S.C. § 841(b)(1)(A). (*See* Docket #1, #2). And, according to this theory, Mr. Lund argues that his mandatory minimum sentence is no longer supported by the evidence. (Docket #1, #2).

Pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, the Court screened Mr. Lund's petition on February 12, 2016. (Docket #3). In that screening order, the Court concluded that Mr. Lund's petition was likely time-barred. (Docket #3). However, because the Court could not determine, based on the record before it, whether the actual innocence gateway and/or the doctrine of equitable tolling might excuse Mr. Lund's apparent delay in

---

[1] In *Alleyne*, the Supreme Court held any fact—other than the fact of a prior conviction—that increases the applicable statutory mandatory minimum sentence for a crime must be submitted to a jury and found beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2155. Furthermore, in *Burrage,* the Court held that in context of a drug conviction under 21 U.S.C. § 841(b)(1)(C), a defendant cannot be held liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) where the use of a drug distributed by the defendant is "not an independently sufficient cause of the victim's death or serious bodily injury…unless the drug use is a but-for cause of the death or injury." *Burrage*, 134 S.Ct. at 884. Mr. Lund's argument—which presupposes the retroactive applicability of *Alleyne* and *Burrage* on collateral review—is thus that: (1) his sentence must be corrected because the facts supporting his mandatory minimum sentence were not found by a jury beyond a reasonable doubt, *see Alleyne*, 133 S. Ct. at 2155; and (2) his sentence must be corrected because the toxicology reports prepared with respect to Mr. Goetzke and Mr. Knuth purportedly establish that heroin was not the "but for" cause of their deaths, *Burrage*, 134 S.Ct. at 884. (*See* Docket #9). The Court will address the sufficiency of these arguments in further detail below.

filing, the Court permitted Mr. Lund's petition to proceed past the initial screening stage. (Docket #3).

In response, the government filed an answer in which it argues that the Court's suspicion regarding the untimeliness of Mr. Lund's petition is indeed correct. (Docket #6). More to the point, the government argues that the facts of this case do not support either a statutory or common law exception to the one-year timeliness rules embodied in Section 2255(f). (Docket #6 at 2-3). Further, the government argues that the "new" evidence upon which Mr. Lund relies is not "new" in any sense of that word—Mr. Knuth's and Mr. Goetzke's toxicology reports were a part of discovery in Mr. Lund's underlying criminal case. (Docket #6 at 4).

With respect to the timing of his petition, Mr. Lund makes three arguments.[2] (Docket #8). First, with respect to his position under *Alleyne*, Mr. Lund posits that because his direct appeal with the Seventh Circuit was still pending when *Alleyne* was decided, his claim herein is timely. (Docket #8 at 2). Second, Mr. Lund argues that the toxicology reports upon which he relies are "newly discovered." (Docket #1, #2). Third, Mr. Lund argues that his claims should be equitably tolled because: (1) he experienced difficulties communicating with counsel beginning in February of 2014;[3] and (2) he was not aware of the one-year time limit for Section 2255 petitions. (Docket #8).

---

[2]Mr. Lund also filed a motion for summary judgment in this case based on the timeliness of the government's answer. (Docket #7). However, Mr. Lund's motion fails to account for the fact that the government complied with the Court's order dated April 5, 2015. (Docket #4). Accordingly, the Court will deny Mr. Lund's motion for summary judgment. (Docket #7).

[3]Mr. Lund does *not* assert an ineffective assistance of counsel claim in his petition. (Docket #1). Rather, Mr. Lund's argument regarding the effectiveness of his counsel appears to relate to his position that Mr. Lund's claims should be equitably tolled. (Docket #1, #2, #8, #9).

Mr. Lund's petition is now fully briefed and ripe for adjudication. As a threshold matter, the Court must address whether Mr. Lund's petition is timely. *See* 28 U.S.C. § 2255(f). The Court must examine both statutory and common law timing rules and exceptions applicable to Section 2255 petitions.

The statute of limitations governing Section 2255 petitions is embodied in 28 U.S.C. § 2255(f). Mr. Lund arguably presents three statutory bases upon which this Court may find his petition timely: (1) Section 2255(f)(1) (stating that the "1-year period of limitation…shall run from…the date on which the judgment of conviction becomes final"); (2) Section 2255(f)(3) (stating that the "1-year period of limitation…shall run from…the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"); or (3) Section 2255(f)(4) (stating that the "1-year period of limitation…shall run from…the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"). The Court will address each possibility in turn.

First, to determine whether Mr. Lund's petition is timely under Section 2255(f)(1), the Court must ascertain the date upon which Mr. Lund's conviction became "final." Here, Mr. Lund directly appealed his sentence to the Seventh Circuit, who upheld his sentence on July 3, 2013. *See Walker*, 721 F.3d at 840. Because Mr. Lund did not file a petition for a writ of certiorari to the Supreme Court, his judgment of conviction became final on October 1, 2013, and he therefore had until October 1, 2014, to file a timely Section 2255 petition. *See* 28 U.S.C. § 1254(1); *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008) ("The Supreme Court held [in *Clay v. United States*, 537 U.S. 522, (2003)] that a federal conviction becomes 'final' with the expiration of time

to file a petition for a writ of certiorari (or, if certiorari is sought and denied, on the date of denial.)"); S. Ct. Rule 13.1. Under this rule, and contrary to Mr. Lund's position, it is of no moment that *Alleyne* was decided while Mr. Lund's direct appeal was pending before the Seventh Circuit. (Docket #8). Rather, because Mr. Lund filed his petition on February 1, 2016—more than one year after his conviction became final—his petition fails to satisfy Section 2255(f)(1). (*See* Docket #1).

Next, in order for Section 2255(f)(3) to save Mr. Lund's petition from being time-barred, Mr. Lund must have filed his petition within one year of when "the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." In his petition, Mr. Lund argues that both *Burrage*, 134 S.Ct. at 881, and *Alleyne*, 133 S.Ct. at 2151, are the sources of "newly recognized" rights that are relevant to this petition. (*See* Docket #1, #2, #8, #9). These cases, however, do not assist Mr. Lund under Section 2255(f) because the Supreme Court decided them over a year before Mr. Lund filed the instant Section 2255 petition. *See Burrage*, 134 S.Ct. at 881 (decided January 27, 2014); *Alleyne*, 133 S.Ct. at 2151 (decided on June 17, 2013). Thus, Mr. Lund's petition fails to satisfy the statutory timeliness exception embodied in Section 2255(f)(3).

Finally, the rule embodied in Section 2255(f)(4) states that a habeas petition is timely if it is presented within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Mr. Lund's arguments on this point are not clear. On the one hand, Mr. Lund suggests that the toxicology reports are "newly discovered" in the sense that they have new legal significance following the Supreme Court's decisions in *Burrage* and

*Alleyne.* (*See* Docket #8 at 7) ("[W]ith the dramatic change of law…the new law effectively converted the toxicology documents…into evidence favorable to petitioner."). On the other hand, Mr. Lund states—without elaboration—that he has only recently had an opportunity to view the toxicology reports of Mr. Knuth and Mr. Goetzke. (*See* Docket #2 at 1) ("This claim also comes…through newly discovered facts within the Toxicology and Investigative Reports…[which] could not have been discovered earlier by the petitioner.") In his reply, Mr. Lund states that this may be due to some measure of ineffective assistance of his counsel. (*See* Docket #8 at 7) (explaining that Mr. Lund "took it upon himself to send for those documents, which were discovered for the first time by petitioner [in] May [of] 2015….[t]his is obviously attributed to ineffective assistance of counsel….").

Under either theory, Mr. Lund's arguments fail. With regard to Mr. Lund's first argument, the Seventh Circuit has expressly rejected the notion that a substantive "court decision can be a 'factual predicate' within the meaning" of a statutory tolling mechanism like Section 2255(f)(4). *See e.g., Lo v. Endicott*, 506 F.3d 572, 575-76 (7th Cir. 2007) (holding that a clarification in the law is "not a fact within [the petitioner's] own litigation history that change[s] his legal status" for the purpose of Section 2244(d)(1)(C)), the state conviction equivalent of Section 2255(f)(4)). With regard to Mr. Lund's second argument, Mr. Lund does not dispute that his lawyers had access to the documents in question, which the government represents were part of discovery in the underlying criminal case. (Docket #6 at 4). Moreover, the presentence investigative report prepared by the probation department with respect to Mr. Lund expressly cites to Mr. Goetzke's toxicology report. Indeed, the toxicology reports presented by Mr. Lund are dated June of 2008 and July of 2008, respectively—over a year prior to Mr. Lund's sentencing.

(Docket #2, Ex. 1 at 15-17, 19-21; *Johnson*, Case No. 08-CR-197, Docket #616). Thus, this Court concludes that Mr. Lund filed his petition outside of the one-year window in which he could have discovered Mr. Knuth's and Mr. Goetzke's toxicology reports with due diligence. The timeliness rule embodied in Section 2255(f)(4) is not the life raft upon which Mr. Lund's petition may be salvaged.

Though all of the statutory rules governing the Section 2255 limitations period indicate that Mr. Lund's petition is untimely, Mr. Lund argues that two common law exceptions to the Section 2255 time bar may nonetheless render his petition timely: the actual innocence gateway and equitable tolling. (Docket #1, #2). With respect to his actual innocence argument, Mr. Lund contends that the toxicology reports from Mr. Goetzke and Mr. Knuth reveal that the heroin he conspired to distribute was not the "but for" cause of the mens' deaths, thereby rendering him actually innocent of the conduct supporting his penalty enhancement under 28 U.S.C. § 841(b)(1)(A). (Docket #1, #2). Moreover, he argues that his sentence was imposed in violation of *Alleyne,* 133 S. Ct. at 2153, because the fact that he "caused" Mr. Knuth's and Mr. Goetzke's deaths—and was, therefore, subject to the mandatory minimum penalty enhancement embodied in 28 U.S.C. § 841(b)(1)(A)—was not submitted to a jury and found beyond a reasonable doubt. (Docket #8 at 1-2). Accordingly, Mr. Lund contends that, under the Supreme Court's intervening case law, he is "actually innocent."

Mr. Lund may avoid the statutory time limits embodied in Section 2255(f) by arguing that the common law doctrine of actual innocence applies. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). To qualify for this narrow equitable gateway, Mr. Lund must "present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial

unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Further, he must show "that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). "The new evidence may include 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir.), *cert. denied*, 134 S. Ct. 2317 (2014) (internal citations omitted). "The actual innocence standard is a demanding one that "permits review only in the 'extraordinary' case." *Id.* (internal citations omitted).

As described above, Mr. Lund does not present "new evidence" in the form of new *facts*. Nonetheless, Mr. Lund argues that a change in governing law—namely, *Burrage* and *Alleyne*— constitute "new evidence" which entitle him to equitable relief from the statutory time bar governing this case.

As noted in this Court's screening order, however, it is an open question in this Circuit as to whether an intervening change in law is sufficient to constitute "new evidence" for the purpose of a claim of actual innocence. *See Gladney*, 799 F.3d at 897 ("That argument raises a new question in this circuit, which is whether the *Schlup* actual innocence standard can be satisfied by a change in law *rather than* new evidence.") (emphasis added). There is likewise a circuit split on this question. *See Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime."); *Phillips v. United States*, 734 F.3d 573, 581 n. 8 (6th Cir. 2013) (declining "to accept the government's suggestion that in *McQuiggin*, the Court meant to limit actual innocence claims to those

instances where a petitioner presents new facts…and by implication to undermine those cases that have applied an equitable exception in cases where the innocence is occasioned not by new evidence but by an intervening, controlling change in the law as applied to a static set of facts"); *McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011) ("First, and most importantly, for purposes of the actual innocence exception, 'actual innocence' means factual innocence, not mere legal insufficiency.") (internal citations omitted); *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999) ("Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent."). The Seventh Circuit in *Gladney* declined to address this issue because the Wisconsin Supreme Court had expressly held that the legal rule upon which the petitioner sought to rely had not been found to be retroactively applicable. *See Gladney*, 799 F.3d at 897 (citing *State v. Lo*, 264 Wis.2d 1, 665 N.W.2d 756, 770–72 (2003)).

Even assuming that the Seventh Circuit had endorsed the argument that the actual innocence gateway may be supported by an intervening change in law, the Seventh Circuit has expressly held that *Alleyne* does not apply retroactively on collateral review. *See Crayton v. United States*, 799 F.3d 623, 624 (7th Cir.), *cert. denied*, 136 S. Ct. 424 (2015). Admittedly, the Seventh Circuit has not clarified the same with respect to *Burrage*. *Compare Krieger v. United States*, No. 14-CV-00749-JPG, 2015 WL 3623482, at *3 (S.D. Ill. June 10, 2015) ("Because the Supreme Court did not declare that *Burrage* applied retroactively on collateral attack, this Court cannot authorize a *successive* collateral attack based on Section 2255.") (emphasis added) *with Weldon v.*

*United States*, No. 14-0691-DRH, 2015 WL 1806253, at *3 (S.D. Ill. Apr. 17, 2015) ("Weldon argues that *Burrage* makes him innocent of the charges contained in the indictment against him. In response, the government concedes that *Burrage* is substantive in nature and is retroactive. However, the government argues that *Burrage* does not help Weldon because at the time of his plea and sentencing the Seventh Circuit's decision in *Hatfield v. United States* was the controlling law and that *Hatfield* utilized the same "but for" causation test as *Burrage* now requires."); *cf. United States v. Martin*, 564 Fed. Appx. 850, 851 (7th Cir. 2014) (noting that "decisions in the *Apprendi* sequence do not apply retroactively") (internal citations omitted).

The Court declines to reach the unnecessary question of whether *Burrage* is retroactive under the framework of *Teague v. Lane*, 489 U.S. 288 (1989) because the Seventh Circuit has not endorsed Mr. Lund's preliminary position: that an intervening change in law supports a claim of actual innocence. *See Gladney*, 799 F.3d at 897. This Court's conclusion that intervening changes in the law do not support a claim of actual innocence comports with the Supreme Court's insistence that the gateway is "extremely rare" and must be supported "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id.* (citing *Schlup*, 513 U.S. at 324); *see also Bousley v. United States*, 523 U.S. 614, 615 (1998) ("Actual innocence means factual innocence, not mere legal insufficiency."); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("We emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence.…"). Accordingly, because Mr. Lund's sole basis for arguing that actual innocence should apply relies on intervening changes in the law, the Court concludes that Mr. Lund is not

entitled to relief under this "narrow" equitable gateway. *Gladney*, 799 F.3d at 897

This does not end the inquiry, though. "The statute of limitations in section 2255 is just that—a statute of limitations, not a jurisdictional limitation, and so it can be tolled." *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) (citing *Nolan v. United States*, 358 F.3d 480, 483–84 (7th Cir. 2004); *Ramos–Martinez v. United States*, 638 F.3d 315, 323–24 (1st Cir. 2011); *Holland v. Florida*, 560 U.S. 631, 645 (2010)). The Seventh Circuit has explained that:

> [t]here are two principal tolling doctrines. One is equitable estoppel, which comes into play "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations" as a defense. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)….The other doctrine is "equitable tolling. It permits a plaintiff to avoid the bar of the statute of limitations if *despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Id.* at 451 (emphasis added); *see also Ramos–Martinez v. United States, supra*, 638 F.3d at 323–24.

*Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013). "Under equitable tolling principles, a petitioner need not count the time during which he (1) pursues his rights diligently, and (2) 'some extraordinary circumstance stood in his way and prevented timely filing.'" *Gladney*, 799 F.3d at 894–95 (quoting *Holland*, 560 U.S. at 649). "It is the petitioner's burden to establish both of these points." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (citing *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)). Moreover, "tolling is rare; it is 'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.'" *Id.* at 684 (citing *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004)).

Mr. Lund's statutory filing deadline is not entitled to equitable tolling in this case. For his part, Mr. Lund argues that equitable tolling should apply because: (1) he experienced difficulties communicating with his attorneys beginning in approximately February of 2014; and (2) he was not aware of the one year statute of limitations for Section 2255 petitions. (Docket #8).

Mr. Lund's arguments fail for three reasons. First, lack of knowledge regarding the statute of limitations and/or lack of legal expertise are insufficient to support equitable tolling. *See Tucker*, 538 F.3d at 735. Second, with regard to the first prong of the *Holland* test, the Court cannot conclude that Mr. Lund acted diligently in pursuing his claims. He proffers no excuse for his delay in drafting his habeas petition from the date his conviction became final—October 1, 2013—until February of 2014. (Docket #8 at 8). Moreover, despite Mr. Lund's assertion that he attempted to contact his attorneys in February of 2014 and again in August of 2014, Mr. Lund fails to explain what "diligent" actions he was taking *during* this time period. *See Taylor v. Michael*, 724 F.3d 806, 810-11 (7th Cir. 2013) (explaining how the petitioner in *Holland* "repeatedly sought assurance that his claims would be preserved for federal habeas review and that statutory deadlines would be met" and "repeatedly wrote to both the Florida Supreme Court and its clerk to ask that his attorney be removed from the case because of this failure to communicate….").

Third, though "egregious behavior" on behalf of an attorney in certain cases can satisfy the second "extraordinary circumstances" prong, neither "a garden variety claim of excusable neglect" nor a "miscalculation" about the time available for filing will meet this high bar. *Holland*, 560 U.S. at 633; *see also Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) ("[A]ttorney negligence is not grounds for equitable tolling…."). "The rationale is that

Page 12 of 15

Case 2:16-cv-00119-JPS   Filed 05/27/16   Page 12 of 15   Document 10

attorney negligence is not extraordinary and clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures." *Id.* Here, despite Mr. Lund's assertion that his attorneys failed to promptly communicate with him, Mr. Lund failed to submit evidence of these alleged communications. Moreover, Mr. Lund admits to having received at least two emails in June of 2014 and July of 2014 from paralegals regarding relevant legal updates. (Docket #8 at 8). He also admits to having spoken with his attorney, Brian Kinstler, in September of 2014. (Docket #9 at 9). In sum, although the record suggests that Mr. Lund's communications with his attorneys were intermittent and inconsistent, this Court is counseled by binding precedent which has expressly held that equitable "tolling is rare; it is 'reserved for extraordinary circumstances *far beyond the litigant's control* that prevented timely filing.'" *Socha*, 763 F.3d at 684 (internal citations omitted) (emphasis added). Mr. Lund's circumstances, with regard to both prongs of the equitable tolling test, do not meet that criteria.[4] *See Montenegro*, 248 F.3d at 594 (refusing to apply equitable tolling despite language barrier, attorney's nonresponsiveness to prisoner's letter, prisoner's limited education and lack of knowledge of prison system, and prisoner's transfer between prisons).

However, under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of

---

[4]Mr. Lund's final arguments in his reply brief are that: (1) his plea should not be deemed an admission that he "caused" the deaths of Mr. Knuth and Mr. Geotzke (Docket #8 at 12); and (2) the guidelines applicable to his sentencing are inappropriate in light of the arguments stated above (Docket #8 at 13). In light of the Court's conclusion that Mr. Lund's petition is barred as untimely, the Court need not address the merits of these arguments and/or Mr. Lund's claims.

appealability under 28 U.S.C. § 2253(c)(2), Mr. Lund must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Further, when the Court has denied relief on procedural grounds, the petitioner must show that jurists of reason would find it debatable both that the "petition states valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, reasonable jurists may debate whether the petition should have been resolved in a different manner. This petition presented two open questions in the Seventh Circuit: (1) whether an intervening change in law is "new evidence" upon which a claim of actual innocence may be supported; and (2) whether *Burrage* is retroactively applicable to cases on collateral review. As a consequence, the Court is compelled to grant a certificate of appealability as to Mr. Lund's petition.

Finally, the Court closes with some information about the actions that Mr. Lund may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this

Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

IT IS ORDERED that, the Court having determined that Mr. Lund's petition for a writ of habeas corpus (Docket #1) is untimely, the petition (*id.*) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Mr. Lund's motion for summary judgment (Docket#7) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice; and

IT IS FURTHER ORDERED that a certificate of appealability be and the same is hereby GRANTED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge